EZELL, Judge.
Ijln this matter, Marc Bordelon appeals the decision of the workers’ compensation judge below denying his disputed claim for workers’ compensation benefits against the Lafayette Consolidated Government (LCG). For the following reasons, we hereby affirm the decision of the workers’ compensation judge.
Dr. Bordelon was injured in the course and scope of his employment with LCG in September of 2003, suffering a disc protrusion that required surgery. His injury requires that he take prescription medication for muscle spasms and pain. He had been receiving his medications via mail from Injured Workers Pharmacy (IWP). LCG issued Dr. Bordelon a prescription medication card to receive his medications through CVS/Caremark and notified Dr. Bordelon and IWP in May of 2010 that any further bills for medications from IWP would not be authorized. In April of 2011, Dr. Bordelon ordered medications from IWP, despite the notice to both that bills for any such orders would not be paid by LCG. Dr. Bordelon filed a 1008 in June of 2011 seeking choice of pharmacy. In February of 2012, the workers’ compensation judge granted summary judgment in favor of LCG, finding that it, not Dr. Bordelon, had choice of pharmacy. However, the workers’ compensation judge told Dr. Bor-delon at the time that, if the medications were not delivered in a reasonable time-frame, he could file a motion to change the pharmacy.
Claiming such delays occurred, Dr. Bor-delon filed a motion for his choice of pharmacy on May 11, 2012. The workers’ compensation judge ruled that LCG’s choice of pharmacy was reasonable and that there were no deficiencies in the filling of Dr. Bordelon’s prescriptions that would require a change. The workers’ compensation judge also limited the payment of outstanding pharmacy bills to IWP |2to $750 under La.R.S 23:1142 and denied Dr. Bordelon penalties and attorney fees. From that decision, Dr. Bordelon appeals.
Dr. Bordelon asserts three assignments of error on appeal. He claims that the workers’ compensation judge erred in not granting his choice of pharmacy; in limiting the payment of outstanding pharmacy bills to $750 under La.R.S 23:1142; and in failing to award him penalties and attorney fees.
In his first assignment of error, Dr. Bordelon claims that the workers’ compensation judge erred in not granting him his choice of pharmacy. We disagree. In holding that LCG’s plan was reasonable and contained no failings so great as to require a change, the workers’ compensation judge, relied on this court’s opinion in Sigler v. Rand, 04-1138 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, writ denied, 05-0278 (La.4/1/05), 897 So.2d 611. Dr. Bordelon claims that this ruling conflicted with a separate opinion of this court, Louisiana Clinic v. Patin’s Tire Service, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. However, that alleged conflict was directly addressed in Sigler, wherein, we stated:
[the employee] takes issue with [employer’s] reason for its action and asserts that in any event [the employer] was not entitled to cho[o]se the pharmaceutical provider for his medications, citing Louisiana Clinic v. Patin’s Tire *423 Service, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. Patin’s involved the administration of án MRI by a certain healthcare provider, Louisiana Clinic. The employer and workers’ compensation insurer in that case authorized the MRI but refused to authorize Louisiana Clinic to administer the diagnostic test. We explained: “We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician.” Id. at 528.' Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that Pa-tin’s does not apply to the circumstances of this case. Unlike in the Patin’s case, the medication Sigler obtained was the same regardless of which pharmaceutical company provided it.
[¡¡Thus, we do not find that [the employer] violated its obligation to Sigler simply because it chose to have his prescriptions filled by a different pharmaceutical company.
Sigler, 896 So.2d at 198.
Dr. Bordelon was informed by LCG and its pharmacy plan on how to properly fill his prescriptions in a timely manner, but his failure to follow the instructions he was provided was not the fault of LCG. Had Dr. Bordelon wanted his prescriptions filled quicker than the timeframe set by the mail order option he chose on his own accord, he had an ample number of local pharmacies in which to do so, or he could have simply sent in the prescriptions in the timeframe set out to him by CVS/Care-mark. We can find no error in the workers’ compensation judge’s determination that, under Sigler, LCG was entitled to choose the pharmacy to be used by Dr. Bordelon.
In his next assignment of error, Dr. Bordelon argues that the workers’ compensation judge erred in limiting the payment of the outstanding pharmacy bill to $750.00 through an allegedly erroneous application of La.R.S. 23:1142. Dr. Borde-lon argues that the workers’ compensation judge should have instead applied La.R.S. 23:1203 to award the lesser of the actual cost or the cost allowed under the reimbursement schedule for the prescribed medication at issue. Again, we disagree.
This issue was discussed by this court in Rebel Distributors Corp., Inc. v. LUBA Workers’ Comp., 2012-909 (La.App. 3 Cir. 4/2/14), 137 So.3d 91, 95-97, wherein we stated (first through fourth alterations in original):
Louisiana Revised Statutes Article 23:1142 is located in Subpart G, entitled “ATTORNEYS AND PHYSICIANS[,]” of Part I, “SCOPE AND OPERATION[,]” of the Workers’ Compensation Act. At the time of the transaction at issue in this litigation, La.R.S. 23:1142 read, in pertinent part:
[[Image here]]
|4B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee of the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic *424 testing or treatment by the health care provider.
(2)(a) When the payor has agreed to the diagnostic testing or treatment, the health care provider shall not issue any demand for payment to the employee or his family until the payor denies liability for the diagnostic testing or treatment. Notwithstanding the foregoing, the health care provider may reasonably communicate with the employee or his attorney or representative for the purpose of pursuing its claim against the payor.
(b) A health care provider who knowingly and willfully violates this Paragraph may be ordered by the workers’ compensation judge to pay penalties not to exceed two hundred fifty dollars per violation plus reasonable attorney fees. The penalty shall not exceed one thousand dollars for any demand for payment to an employee or his family which is issued after the health care provider has been penalized for a previous demand for payment to that employee or his family.
[[Image here]]
Although La.R.S. 23:1142(B)(1) does not specifically include prescription medication in the “nonemergency diagnostic testing or treatment” which is subject to the $750.00 cap, we find no error in the WCJ’s application of La.R.S. 23:1142 to [Plaintiffs’] claim against [the Defendant].
We choose to follow this prior ruling of this court. Furthermore, in this case, LCG provided Dr. Bordelon and his pharmacy, IWP, with notice in writing that payment to that IWP would cease to be made, effective June 1, 2010. This notice was followed up by another letter to IWP reiterating that LCG would not pay for [sany charges to it for Dr. Bordelon after June 1, 2010. LCG received no bills from IWP until April and May of 2011, while Dr. Bordelon used the LCG service. When those bills from IWP were received, LCG immediately sent notice that the bills would not be paid, as previously told to IWP, and tendered $750 for payment for Dr. Bordelon’s prescriptions. Dr. Borde-lon and' IWP knowingly incurred more than $750 in expenses without LCG’s consent, despite prior notification IWP would not be paid for services rendered to Dr. Bordelon. Dr. Bordelon argues that once LCG told IWP it would not approve the purchase of drugs from them, it was a denial of his claims and that authorization was no longer required. However, LCG never denied Dr. Bordelon his claim for prescription drugs and, in . fact, set up a system by which he could receive them through 113 pharmacies locally or via the mail. Dr. Bordelon simply refused to use that system properly. We find no merit in this assignment of error.
Finally, Dr. Bordelon claims the workers’ compensation judge erred in failing to assess penalties and attorney fees for the failure to timely pay for the prescription medication. “The determination of whether an employer should be cast with penalties and attorney fees in a workers’ compensation case is essentially a question of fact and subject to the manifest error/clearly wrong standard of review.” Krogh v. Tri-State Refrigeration, 11-697, p. 2 (La.App. 3 Cir. 11/2/11), 79 So.3d 445, 447 (citing Reed v. Abshire, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224). As we have found no error in the workers’ compensation judge’s findings above, we cannot say that the workers’ compensation judge erred in not awarding Dr. Bordelon penalties and attorney fees.
|ñFor the above reasons, we hereby affirm the decision of the workers’ compensation judge. Costs of this appeal are *425 hereby assessed against Dr. Marc Borde-lon.
AFFIRMED.
SAUNDERS, J., dissents with written reasons.